## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BLACK DIAMOND EQUIPMENT, LTD., | : : |
| Plaintiff, | : : |
| v. | : Court No. 20-00526 : |
| UNITED STATES OF AMERICA; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; ROBERT E. LIGHTHIZER, U.S. TRADE REPRESENTATIVE; U.S. CUSTOMS & BORDER PROTECTION; MARK A. MORGAN, U.S. CUSTOMS & BORDER PROTECTION ACTING COMMISSIONER, | : : : : : : : : |
| Defendants. | : : |

## <u>COMPLAINT</u>

Plaintiff Black Diamond Equipment, Ltd., through its undersigned attorneys, alleges and states as follows:

1.     This action concerns the unlawful actions of Defendants in escalating the trade war with China through the imposition of a third round of tariffs under what has colloquially been identified as "List 3" (*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47974 (Sept. 21, 2018)) and a fourth round of tariffs under what has colloquially been identified as "List 4" (*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43304 (August 20, 2019);

2.     The Trade Act of 1974, 19 U.S.C. §2411 (hereinafter referred to as the "Trade Act"), was enacted into public law on January 3, 1975 (Pub.L. 93-618, 88 Stat. 1978, January 3,

1975, codified at 19 U.S.C. Chapter 12) for the express purpose "To promote the development of an open, nondiscriminatory, and fair world economic system, to stimulate fair and free competition between the United States and foreign nations, to foster the economic growth of, and full employment in, the United States, and for other purposes."

3.      While the Trade Act established authority for the Office of the United States Trade Representative ("USTR") to investigate, *inter alia*, any instance in which

an act, policy, or practice of a foreign country—

**(i)** violates, or is inconsistent with, the provisions of, or otherwise denies benefits to the United States under, any trade agreement, or
**(ii)** is unjustifiable and burdens or restricts United States commerce

19 U.S.C. §2411(a)(1)(B), that authority is not unfettered, and any investigation undertaken must be pursued, assessed and implemented consistent with the constraints imposed under the law.

4.      Pursuant to that authority, USTR undertook an investigation into China's unfair intellectual property policies and practices. In furtherance to that investigation, USTR was required to determine within 12 months of the initiation of that investigation as to the responsive action to be taken, if any, based on USTR's findings. *See* 19 U.S.C. §2414. However, despite that requirement, USTR did not issue either List 3 or List 4 until well after the expiration of that 12-month period. Although the Trade Act includes a provision that permits USTR to modify or terminate any action taken with respect to USTR's Section 301 findings, any such action must be taken consistent with "the acts, policies, and practices, that are the subject of such action." 19 U.S.C. §2417(a)(1)(B). And yet, despite that constraint, the issuance and implementation of both Lists 3 and 4 reflect actions taken by Defendants that extends far beyond that express authority.

5.      In addition to acting contrary to the requirements of the Trade Act, the actions taken by Defendants in implementing List 3 and List 4 are also violative of the Administrative Procedure

Act ("APA"), 5 U.S.C. §551 *et seq*. Such actions violated APA requirements in that interested parties were not provided with sufficient opportunity to comment – whether in favor or against – List 3 and List 4 proposed tariffs.  Moreover, the determination of Defendants in imposing these tariffs under both Lists 3 and 4 was made without consideration of all factors essential to rendering its final decision. Finally, despite receiving more than 6,000 comments regarding those commodities and associated tariff classifications under consideration for final inclusion in List 3 and another 3,000 comments regarding those commodities and associated tariff classifications under consideration for final inclusion in List 4, no response of any nature was provided by USTR regarding the impact of those comments on its final decision-making.

6.      The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund (with interest) any duties paid by Plaintiff pursuant to Lists 3 and 4.

## JURISDICTION

7.      The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. §1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for ... tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. §1581(i)(1)(B).

## PARTIES

8.      Plaintiff Black Diamond Equipment, Ltd. ("Black Diamond") is a manufacturer of equipment for climbing, skiing and mountain sports based in Salt Lake City, Utah. Plaintiff has made numerous entries of a wide range of commodities classified under various HTSUS Subheadings that are subject to the additional *ad valorem* tariffs under List 3 and List 4.

9.      Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. §702 and 28 U.S.C. §1581(i)(1)(B).

10.      The Office of the United States Trade Representative is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President. USTR conducted the Section 301 investigation at issue and made numerous decisions regarding both List 3 and List 4.

11.      Ambassador Robert Lighthizer currently holds the position of USTR and serves as the director of the Office of the USTR. In these capacities, he made numerous decisions regarding List 3 and List 4.

12.      Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects duties on imports. CBP collected payments made by Plaintiff to account for the tariffs imposed by USTR under Lists 3 and 4.

13.      Defendant Mark A. Morgan is the Acting Commissioner of CBP. In this capacity, he oversees CBP's collection of duties paid by Plaintiff under Lists 3 and 4.

## STANDING

14.      Black Diamond has standing to sue because it is "adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C. §702; *see* 28 U.S.C. §2631(i) ("Any civil action of which the Court of International Trade has jurisdiction ... may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). Tariffs imposed by Defendants pursuant to List 3 and List 4 adversely affected and aggrieved Black Diamond because it was required to pay these unlawful duties.

**TIMELINESS OF THE ACTION**

15.     A plaintiff must commence an action under 28 U.S.C. §1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. §2636(i).

16.     The instant action contests action taken by Defendants that resulted in additional duties assessed on produced included in List 3 and List 4. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47974 (Sept. 21, 2018) and *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43304 (August 20, 2019). Plaintiff's claims accrued at the earliest on September 21, 2018 upon publication of notice by USTR of the commodities encompassed by List 3 in the *Federal Register*. *Id.* Plaintiff has, therefore, timely filed this action.

**RELEVANT LAW**

17.     Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices. 19 U.S.C. §2411(b). If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice. *Id.* §2411(b), (c)(1)(B).

18.     Section 304 of the Trade Act requires USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation. *Id.* §2414(a)(1)(B), (2)(B).

19.     Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has

"increased or decreased" or when the action "is no longer appropriate." *Id.* §2417(a)(1)(B), (C).

## PROCEDURAL HISTORY

I.   **USTR's Investigation**

20.     On August 14, 2017, a Memorandum was issued by the President to Ambassador Lighthizer to "determine, consistent with section 302(b) of the Trade Act of 1974 (19 U.S.C. 2412(b)), whether to investigate any of China's laws, policies, practices or actions that may be unreasonable or discriminatory and that may be harming American intellectual property rights, innovation, or technology development." *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39007 (Aug. 17, 2017). As stated in that memorandum, "China has implemented laws, policies, and practices and has taken actions related to intellectual property, innovation, and technology that may encourage or require the transfer of American technology and intellectual property to enterprises in China or that may otherwise negatively affect American economic interests. These laws, policies, practices, and actions may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." *Id.*

21.     In response to that memorandum, on August 18, 2017, USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40213 (Aug. 24, 2017).

22.     On March 22, 2018, USTR released its report on its findings from its investigation into China's acts, policies and practices.  That report, entitled OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), was published by USTR at its website: https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF.

23.     Based on its investigation, USTR concluded that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id.* at 17. This conclusion was founded on a number of reasons, including (1) China's use of "foreign ownership restrictions, including joint venture requirements, equity limitations, and other investment restrictions, to require or pressure technology transfer from U.S. companies to Chinese entities"; (2) China's imposition of "substantial restrictions on, and interven[tion] in, U.S. firms' investments and activities, including through restrictions on technology licensing terms"; (3) China's  direction and facilitation of "the systematic investment in, and acquisition of, U.S. companies and assets by Chinese companies to obtain cutting-edge technologies and intellectual property and to generate large-scale technology transfer in industries deemed important by Chinese government industrial plans"; and (4) China's conduct and support of " conducts and supports unauthorized intrusions into, and theft from, the computer networks of U.S. companies." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Press Release* on *President Trump Announces Strong Actions to Address China's Unfair Trade*, March 22, 2018, *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/march/president-trump-announces-strong.

24.     Although the results of USTR's findings were not quantified in its report, through an accompanying "Section 301" Fact Sheet issued that same day, USTR noted that it was estimated "that China's policies result in harm to the U.S. economy of at least $50 billion per year." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018),     *available     at*     https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/section-301-fact-sheet. Based on those findings, it was the direction of the President to take three actions: (1) pursue a cause of action through the World Trade Organization dispute resolution mechanism regarding China's discriminatory licensing practices; (2) propose measures to restrict Chinese acquisition of sensitive technologies; and (3) propose 25% in *ad valorem* duties "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id.*; *see also* the President's directive*: Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13099 (Mar. 27, 2018).

II.     **Publication of Lists 1 and 2 Commodities & Associated Tariff Provisions**

25.     Subsequent to the issuance of this report and associated Presidential directive, and within the 12-month statutory deadline from the initiation of the Section 301 investigation as imposed under the statute (*see* 19 U.S.C. §2414(a)(2)(B)), Defendants proceeded to identify and impose tariffs on those commodities and associated tariff provisions intended to remedy the estimated $50 billion in harm occasioned to the U.S. economy as a result of China's identified unfair trade practices.

26.     On April 6, 2018, USTR published notice of a proposed list of commodities and associated tariff classifications against which it intended to impose "an additional duty of 25 percent on a

list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14906, 14907 (Apr. 6, 2018). 1,333 distinct tariff provisions at a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018" of Chinese origin goods were identified through that notice. *Id.* at 14907. USTR targeted $50 billion as that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

27. On June 20, 2018, USTR published its final list – more-commonly known as "List 1" – of 818 tariff provisions of Chinese origin subject to an additional duty of 25% *ad valorem*. *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28710 (June 20, 2018). In total, those provisions amounted to "an approximate annual trade value of $34 billion" with the 25% *ad valorem* tariffs associated with those classifications scheduled to go into effect as of July 6, 2018. *Id.* at 28711.

28. In addition, as part of that Notice, USTR also announced its intent to impose the same 25% *ad valorem* duty on a further list of 284 commodities/associated tariff classifications of Chinese origin equal to approximately $16 billion in annual trade under the premise that imposing these additional tariffs "would maintain the effectiveness of a $50 billion trade action." *Id.* at

28712. This second proposed group is more-commonly identified as "List 2."

29.     On August 16, 2018, USTR published notice of the final list of "List 2" products that would be subject to the same 25% *ad valorem* tariff. *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40823, 40823-24 (Aug. 16, 2018). In total, 279 of the original 284 targeted tariff provisions were retained, at "approximately $16 billion" in remaining annualized U.S.-Chinese origin trade value. *Id.*

III.    **Publication of Lists 3 and 4 Commodities & Associated Tariff Provisions**

30.     Although the Administration was of the belief that imposition of these tariffs would lead to a modification in behavior by the Chinese Government, no such change occurred. Instead, the relationship between the U.S. and China continued to deteriorate and, as a result of the Administration's perception of on-going Chinese intransigence, Defendants continued to turn to Section 301 to impose tariffs on more than $500 billion in additional imports. Although couched in the language of Section 301, these actions were no longer directed specifically at the findings arising out of USTR's Section 301 Report but, rather, taken in response to other dynamics pertinent to the U.S.-China relationship.

31.     Shortly after President Trump directed USTR in April 2018 to consider imposing duties on $50 billion in Chinese products as a result of the Section 301 investigation, China threatened to impose retaliatory duties on the same value of imports originating from the United States. In response to this threatened action, President Trump "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation." THE WHITE HOUSE, *Statement from Donald J. Trump on Additional Proposed    Section    301    Remedies    (Apr.    5,    2018),    available    at*

https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trumpadditional-proposed-section-301-remedies/.

32.　　When USTR finalized List 1 in mid-June 2018, President Trump warned China that he would consider imposing additional tariffs on Chinese goods if China retaliated against the United States. *E.g.*, Vicki Needham & Max Greenwood, *Trump Announces Tariffs on $50 Billion in Chinese Goods*, THE HILL (June 15, 2018), *available at* http://thehill.com/homenews/administration/392421-trump-announces-tariffs-on-50-billion-in-chinese-goods ("The president said the United States will pursue additional tariffs if China retaliates 'such as imposing new tariffs on United States goods, services or agricultural products; raising non-tariff barriers; or taking punitive actions against American exporters or American companies operating in China.'").

33.　　On June 18, 2018, President Trump formally directed USTR to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion.  This was the case despite the fact that USTR had not yet implemented the tariffs emanating from either List 1 or List 2. President Trump acknowledged that China's threatened retaliatory "tariffs on $50 billion worth of United States exports" as well as the continued expansive trade deficit motivated his decision. THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-tradechina-2/ ("This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods. This is unacceptable.").

34.     In acknowledgement of the President's intent, USTR made it clear that any new tariffs proposed were intended to address China's threatened retaliatory measures, rather than any of the harms identified in its Section 301 investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/aboutus/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0 (commenting that while the imposition of Lists 1 and 2 was "proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the tariffs proposed for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

35.     On July 17, 2018, or approximately one week after China confirmed the imposition of its own tariffs on importations of U.S. origin goods in the amount of $50 billion, USTR published notice of a "proposed modification of the action taken in this investigation … to take further action in the form of an additional 10 percent *ad valorem* duty on products of China with an annual trade value of approximately $200 billion." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33608, 33608 (July 17, 2018). In proposing these further tariffs, USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate." *Id.* at 33,609 (citing 19 U.S.C. §2417(a)(1)(c)). USTR initially set a deadline of August 17, 2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id.* at 33,608.

36.     In its notice, USTR confirmed that the proposed expansion of these tariffs bore no nexus to the findings from the Section 301 investigation but, rather, was based on China's decision to impose "retaliatory duties" as the primary basis for its proposed action. *Id.* at 33,609 (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices"). USTR expanded on this basis by explicitly tying the $200 billion in its proposed action to the acts of the Chinese Government, stating that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id.*; *see also id.* (Because "China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). Although it pointed to China's retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated. *See id.*

37.     Press statements by USTR only further reinforced this nexus.  In a statement issued on July 10, 2018 Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), *available at* https://ustr.gov/about- us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

38.     Concurrent with Ambassador Lighthizer's statement, President Trump suggested via tweet that the United States' trade imbalance with China supported the decision to pursue these additional tariffs. @realDonaldTrump, TWITTER (July 10, 2018, 9:17 PM EDT), https://twitter.com/realDonaldTrump/status/1005982266496094209. President Trump continued to

tweet about China, expressing frustration over China's purported manipulation of its currency and national monetary policy, as well as his continued displeasure over China's retaliatory tariffs and the trade imbalance between the two nations. *See, e.g.*, @realDonaldTrump, TWITTER (July 20, 2018, 8:43 AM EDT), https://twitter.com/realDonaldTrump/status/1020287981020729344; @realDonaldTrump, TWITTER (July 20, 2018, 8:51 AM EDT), https://twitter.com/realDonaldTrump/status/1020290163933630464; @realDonaldTrump, TWITTER (July 25, 2018, 7:20 AM EDT), https://twitter.com/realDonaldTrump/status/1022079127799701504; @realDonaldTrump, Twitter (July 25, 2018, 7:01 AM EDT), https://twitter.com/realDonaldTrump/status/1022074 252999225344.

39.     On August 1, 2018, Ambassador Lighthizer announced that, in light of China's retaliatory duties, USTR would propose to increase the additional duty from 10% to 25% *ad valorem*. Rather than addressing the practices that USTR investigated pursuant to Section 301 of the Trade Act, Ambassador Lighthizer stated that China "[r]egrettably . . . has illegally retaliated against U.S. workers, farmers, ranchers and businesses." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/statement-us-trade-representative.

40.     On August 7, 2018, USTR followed through on its comments, formally proposing at the direction of the President to raise "the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent." *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg.

14

38,760, 38,760 (Aug. 7, 2018).  USTR also set new dates for a public hearing over six days ending on August 27, 2018. *See id.*; *see also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301  Tariff List* (Aug. 17, 2018) (modifying hearing schedule), *available at* https://ustr.gov/about-us/policy- offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

41.     Concurrently, USTR made adjustments to the deadlines for the submission of written comments, setting September 6, 2018, or less than one month later, as the new deadline for both <u>initial</u> and <u>rebuttal</u> comments from the public. 83 Fed. Reg. at 38,761. By collapsing those periods into one, both USTR and the public were denied with the opportunity to consider comments at the hearing, while also ensuring insufficient time for interested parts to review and respond to the comments filed by other parties. To exacerbate the situation, USTR also limited each hearing participant to five minutes. Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001. This despite the fact that there was great interest in this proposed action, with approximately 350 witnesses appearing at the six-day hearing and the submission of more than 6,000 comments overall. *Id.*

42.     Just eleven days after receiving final comments from the public, President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018) https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/.  Once again, the President made clear that China's response to the $50 billion tariff action (i.e., List 1 and List 2 duties) motivated his decision, and he immediately promised to proceed with "phase three" of the plan—an *additional $267 billion tariff action*—"if China takes retaliatory action against our farmers or other industries." *Id.*

15

43.     Following the President's announcement, USTR published notice of the final list of products subject to additional duty, a list commonly known as "List 3." 83 Fed. Reg. at 47,974. In doing so, a 10% *ad valorem* tariff was initially imposed that was set to rise automatically to 25% on January 1, 2019. *Id.* USTR determined that the List 3 duties would apply to all listed products that enter the United States from China on or after September 24, 2018. *Id.* In issuing this notice, USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses. *Id.*

44.     As legal support for its action, USTR for the first time cited Section 307(a)(1)(B) of the Trade Act, which authorizes USTR to "modify or terminate any action" where "the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." 19 U.S.C. §2417(a)(1)(B). In further support for reliance on that provision, USTR stated that the relevant burden "continues to increase, including following the one-year investigation period," while also noting that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." 83 Fed. Reg. at 47,974. USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id.* at 47,975.

45.     In the months that followed, China and the United States attempted to resolve their differences through trade negotiations. Based on the progress made with China in those negotiations, the Trump Administration announced in December 2018, and again in February

16

2019, that it would delay the scheduled increase in the List 3 duty rate from 10% to 25%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

46.     By May 2019, however, the negotiations had faltered.   At that time, USTR announced its intent to raise the tariff rate on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019, depending on the day of export. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("*List 3 Rate Increase Notice*"); *see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019). The notice cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate.  *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459. Distinct from past rounds, USTR did not solicit public comment; instead, simply declaring that the increase would occur. *Id.*

47.     As of the date of this Complaint, the duties imposed on products covered by List 3 remain in effect, with the exception of the limited number of products for which USTR extended its originally granted exclusions from List 3 duties. *See, e.g., Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020).

48.     On May 17, 2019, USTR announced its intent to pursue tariffs on yet another list, List 4, that encompassed even more products of Chinese origin.  Under USTR's proposal, List 4

would impose an additional duty of 25% *ad valorem* on products worth a further $300 billion. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019). USTR based its decision to pursue these tariffs based on China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce." *Id.*

49.    USTR both solicited comments and sought participation in public hearings regarding this last proposed list. *Id.* In total, nearly 3,000 comments were received. Docket No. USTR-2019-0004, https://beta.regulations.gov/document/USTR-2019-0004-0001. That outreach was once again tempered by the fact that little time was provided for any meaningful discourse as witnesses were required to submit drafts of their testimony by June 10, 2019, some seven days before the deadline for fully developed written comments, with the hearing again limiting witnesses to five minutes of testimony.  *Id.*

50.    On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, President Trump announced that the List 4 tariffs would become effective September 1, 2019 at a rate of 10% *ad valorem*. @realDonaldTrump, TWITTER (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/real DonaldTrump/status/1156979446877962243 (noting a "small additional Tariff of 10% on the remaining 300 Billion Dollars of goods and products coming from China into our Country").

51.    On August 20, 2019, USTR issued a final notice adopting List 4 in two tranches. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019).

List 4A would impose a 10% *ad valorem* duty on goods worth roughly $120 billion, effective September 1, 2019. *Id.* at 43,304. List 4B would impose a 10% *ad valorem* duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019. *Id.* at 43,305. Once again, USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses, other than to claim that its determination "takes account of the public comments and the testimony." *Id.*

52.     As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, justifying its act by simply noting "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id.*

53.     On August 30, 2019, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019).  USTR explained that the increase was necessitated because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." *Id.* at 45,822. USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action rather than associate its decision with the results of its previous Section 301 investigation. *Id.*

54.     On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published notice that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B. *Notice of Modification of Section*

19

*301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019). USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A, *id.*, an action that ultimately became effective on February 14, 2020, when USTR halved the applicable duty rate from 15% to 7.5% *ad valorem. Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

55.     In the months that followed, the United States and China implemented the limited trade deal that they negotiated near the end of 2019. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *United States and China Reach Phase One Trade Agreement* (Dec. 13, 2019), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2019/december/united-states- and-china-reach.

56.     The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint. Although the proposed duties on products covered by List 4B remain suspended, President Trump has continued to threaten to impose them if China does not meet its obligations under their limited trade deal. *See, e.g.*, @realDonaldTrump, TWITTER (June 22, 2020, 10:22 PM EDT), https://twitter.com/realDonaldTrump/status/1275252814206447618 ("The China Trade Deal is fully intact. Hopefully they will continue to live up to the terms of the Agreement!").

**STATEMENT OF CLAIMS**

**COUNT ONE**

**(DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)**

57.    Paragraphs 1 through 56 are incorporated by reference.

58.    The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a).

59.    The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 tariffs.

60.    Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. §2411(b). USTR failed to predicate its action giving rise to List 3 on any such determination.

61.    If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. §2414(a)(1)(B), (2)(B). USTR's action giving rise to List 3 occurred in September 2018, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

62.    Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. §2417(a)(1)(B).  Section 307 of the Trade Act, however, does not permit Defendants to

increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act.  Congress did not authorize USTR to escalate its focused investigatory findings into an open-ended trade war.

63.     Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. §2417(a)(1)(C). Section 307 of the Trade Act does not authorize Defendants to *increase* tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

64.     Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 are *ultra vires* and contrary to law.

## COUNT TWO

## (DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)

65.     Paragraphs 1 through 64 are incorporated by reference.

66.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a).

67.     The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 4 tariffs.

68.     Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. §2411(b). USTR failed to predicate its action giving rise to List 4 on any such determination.

69.     If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. §2414(a)(1)(B), (2)(B). USTR's action giving rise to List 4 occurred in August 2019, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

70.     Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. §2417(a)(1)(B).  Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act.  Congress did not authorize USTR to escalate its focused investigatory findings into an open-ended trade war.

71.     Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. §2417(a)(1)(C). Section 307 of the Trade Act does not authorize Defendants to *increase* tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

72.     Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 4 are *ultra vires* and contrary to law.

## COUNT THREE

## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

73.     Paragraphs 1 through 72 are incorporated by reference

74.     The APA authorizes the Court to hold unlawful and set aside agency action that is:

"(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. §706(2).

75.     Defendants exceeded their authority under the Trade Act in promulgating List 3 and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

76.     Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

77.     Defendants also promulgated List 3 in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale. Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on imports covered by List 3 whose value equals $200 billion.

## **COUNT FOUR**

## **(VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)**

78.     Paragraphs 1 through 77 are incorporated by reference

79.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. §706(2).

80.     Defendants exceeded their authority under the Trade Act in promulgating List 4 and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count Two.

81.     Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

82.     Defendants also promulgated List 4 in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale. Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on imports covered by List 4 whose value equals $300 billion.

* * *

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court

(1)     declare that Defendants' actions resulting in tariffs on products covered by List 3 are unauthorized by, and contrary to, the Trade Act;

(2)     declare that Defendants arbitrarily and unlawfully promulgated List 3 in violation of the APA;

(3)     vacate the List 3 rulemaking;

(4)     order Defendants to refund, with interest, any duties paid by Plaintiff pursuant to List 3;

(5)     permanently enjoin Defendants from applying List 3 against Plaintiff and collecting any duties from Plaintiff pursuant to List 3;

(6)      declare that Defendants' actions resulting in tariffs on products covered by List 4 are unauthorized by, and contrary to, the Trade Act;

(7)      declare that Defendants arbitrarily and unlawfully promulgated List 4 in violation of the APA;

(8)      vacate the List 4 rulemaking;

(9)      order Defendants to refund, with interest, any duties paid by Plaintiff pursuant to List 4;

(10)      permanently enjoin Defendants from applying List 4 against Plaintiff and collecting any duties from Plaintiff pursuant to List 4;

(11)      award Plaintiff its costs and reasonable attorney fees; and

(12)      grant such other and further relief as may be just and proper.

Respectfully submitted,

PAGE FURA, P.C.
*Attorneys for Plaintiff*

By:    /s/ Jeremy Ross Page
        Jeremy Ross Page
        Shannon E. Fura
        939 W. North Avenue, Suite 750
        Chicago, IL  60642
        Tel.: 312-781-6100

Dated: September 18, 2020